IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ONE VODKA LLC *et al.*, *Plaintiffs* | : : : | CIVIL ACTION |
| v. | : : | |
| REDEMPTION SPIRITS, LLC *d/b/a* AMERICAN SPIRITS EXCHANGE LTD., *Defendant* | : : : | No. 21-2654 |

## MEMORANDUM

PRATTER, J.                                                                                     DECEMBER 29, 2021

One Vodka, a liquor company, claims that its former distributor, Redemption Spirits, breached its contract and committed various torts when Redemption sold off One Vodka's stock after One Vodka fell behind on its bill. Armed with the bill, emails, and an affidavit, Redemption insists that the claims all fail as a matter of fact. But this is a motion to dismiss. Because the Court must give One Vodka the benefit of the doubt, Redemption will have to wait until summary judgment to prove its version of the story. That said, even drawing all factual inferences in favor of One Vodka, many of its claims fail as a matter of law. The Court thus grants Redemption's motion in part, leaving for trial One Vodka's core claims.

### BACKGROUND

Redemption Spirits, a Pennsylvania company, imports and distributes spirits. One Vodka, a Texas company, sells craft vodka made in France. Once the vodka was imported from France, Redemption would store it at a warehouse in Philadelphia and then sell it to designated wholesalers.

For three years, the parties worked together. Though One Vodka "sometimes" fell behind in its payments, Redemption was patient, because "such issues were common among its other start-up clients," and One Vodka always caught up on its bills. Am. Compl. ¶¶ 13–14. In July 2020,

1

One Vodka fell behind yet again. Redemption emailed One Vodka, stating that One Vodka owed it $15,773.21. Redemption explained that it had "obtained an offer from a liquidator" to buy the One Vodka stored in Redemption's warehouse, but that Redemption would put the sale "on hold" for One Vodka's payment. "When One Vodka was prepared to make payment," it found out that Redemption had already sold the vodka. *Id.* ¶¶ 21–22. In total, Redemption sold 1,554 cases to Benchmark Beverage Company, a distributor. Full price, a case goes for $104.60, but Redemption sold the vodka for about $20 a case.

Three months later, One Vodka sued Redemption in Texas state court. A month later, Redemption filed its own suit in Pennsylvania state court. Redemption secured a default judgment in its Pennsylvania state court case. One Vodka has since moved to reopen that judgment, claiming it did not get proper notice of the complaint. Meanwhile, the Texas case was removed and then transferred to this Court. Redemption now moves to dismiss One Vodka's complaint for failure to state a claim.

## LEGAL STANDARDS

In its complaint, a plaintiff must set out "a legally cognizable right of action" and "enough facts" to make that cause of action "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (internal quotation marks omitted). On a motion to dismiss for failure to state a claim, the Court takes all well-pleaded facts as true and draws all inferences in the light most favorable to the plaintiff. *Vorchheimer v. Philadelphian Owner's Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018). The Court does not decide whether the plaintiff's story *is* what happened, just whether it plausibly *could have* happened. *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009). In doing so, the Court considers the complaint, plus documents attached to it or "integral" to it, like a contract in a breach-of-contract claim. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

## DISCUSSION

One Vodka sues for breach of contract, promissory estoppel, fraud, conversion, conspiracy, and trademark infringement. The Court dismisses the tort claims but lets the contract claim proceed.

### I. One Vodka has plausibly pled that Redemption breached the contract

One Vodka accuses Redemption of breaching their contract. First, One Vodka argues, Redemption should not have liquidated its product. For its defense, Redemption points to the contract's written terms. Because the contract is "integral to [and] explicitly relied upon in the complaint," the Court will consider it on this motion to dismiss. *Schmidt*, 770 F.3d at 249 (emphasis omitted). Per the contract's written terms, One Vodka must keep enough money in its account with Redemption to cover fees and expenses. One Vodka must also pay its previous month's bill on the first of the next month. If it does not, Redemption "will issue ... a notice of possible default." Doc. No. 25-4, at 57. If One Vodka does not pay its bill within five days, then Redemption will get "full and clear title to all inventory in its management" and may "liquidate" the vodka to recoup its expenses. *Id.*

Though the contract said one thing, One Vodka claims, in practice the parties did another. "Each time" it fell behind on its payments, Redemption let One Vodka "catch up." Am. Compl. ¶ 15. Redemption never "press[ed] One Vodka for payment." *Id.* ¶ 15. Not once did Redemption tell One Vodka it was in default or formally demand payment. Based on this, One Vodka asserts, Redemption "modified" the terms of the contract. *Id.* ¶ 16.

For the most part, the plain language of a written contract controls. *Gene v. Harvey Builders, Inc. v. Pa. Mfrs. Ass'n Ins. Co.*, 517 A.2d 910, 913 (Pa. 1986). That said, parties' course of performance during the contract can "supplement or qualify" an ambiguous term. 13 Pa. Con. Stat. § 1303(d); *Atl. Richfield Co. v. Razumic*, 390 A.2d 736, 741 n.6 (Pa. 1978). Even if a contract

3

term is clear, the parties' subsequent course of performance can be enough to show that the parties "waive[d] or modifi[ed]" that term. 13 Pa. Con. Stat. § 1303(f); *see, e.g., Nutrition Mgmt. Serv. Co. v. New Courtland, Inc.*, 38 Pa. D. & C. 5th 353, 2014 WL 11210812, at *3–4 (Pa. Ct. Common Pleas 2014).

To prove that a course of performance modified a contract, a contracting party must show that, on "repeated occasions," the other party "accept[ed] the performance or acquiesce[d] in it without objection." 13 Pa. Con. Stat. § 1303(a); *see Agathos v. Starlite Motel*, 977 F.2d 1500, 1509 (3d Cir. 1992). One Vodka has plausibly pled just that: though One Vodka was "sometimes" behind in its payments, "[e]ach time, Redemption let One Vodka "catch up." Am. Compl. ¶¶ 13–15.

Fighting this potential modification, Redemption points out that the contract itself says that the contract can be modified only through "a written instrument duly executed by [Redemption's] duly authorized representative." Doc. No. 25-4, at 59. However, even if a written contract explicitly states that modifications must be in writing, that requirement can be waived if the parties show a "clear[]" intent "to waive" it, either through their words, conduct, or course of performance. *Douglas v. Benson*, 439 A.2d 779, 783 (Pa. Super. 1982); *J.W. Goodliffe & Son v. Odzer*, 423 A.2d 1032, 1035 (Pa. Super. Ct. 1980). One Vodka has plausibly pled such a waiver here. Time and again, Redemption continued to accept One Vodka's belated payments, with no repercussions, and even told One Vodka that it would wait for One Vodka's late payment.

Based on this plausible modification, One Vodka has sufficiently pled that Redemption breached the contract by liquidating its vodka. But that is not the sole way in which One Vodka claims that Redemption breached the contract. Per One Vodka, Redemption should not have sold its vodka for so little, at $20 a case rather than its normal price of $104.60 a case. To be sure, even

4

if Redemption had the right under the contract to liquidate the vodka, it had to do so in good faith, and for a reasonable price. *Dep't of Transp. v. Pa. Indus. for Blind & Handicapped*, 886 A.2d 706, 716 (Pa. Commw. Ct. 2005). Likewise, One Vodka contends, Redemption should not have kept the extra money in excess of One Vodka's outstanding bill. After all, the written contract provides that Redemption may liquidate inventory "to recoup … any and all expenses incurred" but says nothing about Redemption keeping any leftover funds. Doc. No. 25-4, at 57. Given that Redemption raises no objections to these well-pleaded theories of breach, they survive too.

## II.    One Vodka has not plausibly pled a claim for promissory estoppel

Even if Redemption did not actually modify the terms of the contract, One Vodka claims that it relied on Redemption's promise not to enforce the terms this one time. When One Vodka fell behind in July 2020, Redemption said that it would let One Vodka catch up on its bill: "We have obtained an offer from a liquidator for your product, but we will put that on hold while we await your payment. Please let me know once you've issued the payment." Am. Compl. ¶ 19. Yet, once One Vodka had the money in hand, Redemption had already sold the vodka. Per One Vodka, Redemption was bound to its earlier promise.

Redemption counters that because the parties had a contract, One Vodka cannot bring a claim for promissory estoppel. To be subject to promissory estoppel, a promisor must have made a promise on which the promisee reasonably relied to its detriment, such that "injustice can only be avoided by enforcing the promise." *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990). Typically, promissory estoppel comes in the *absence* of an enforceable contract. *Id.* Yet One Vodka does not contend that its contract with Redemption is unenforceable. One Vodka must thus be content with suing based on the contract.

Undeterred, One Vodka points out that promissory estoppel can sometimes step in to cover promises made outside of a contract. *West Chester Univ. Found. v. MetLife Ins. Co. of Conn.*, 259 F. Supp. 3d 211, 223 (E.D. Pa. 2017). Even if Redemption's promise to hold off liquidation was separate from the contract, One Vodka has not plausibly explained how it relied on that promise, much less how it was harmed in doing so. *Carlson*, 918 F.2d at 416. For instance, One Vodka has not pled that it would have paid its overdue bills that same day, or gathered money more quickly, or retrieved its stock from the warehouse had Redemption not said it would hold off liquidation. So, the Court dismisses this claim without prejudice.

### III. One Vodka has not plausibly pled unjust enrichment

One Vodka also accuses Redemption of unjust enrichment, claiming that Redemption kept far more money from the sale than One Vodka owed and still has 40 cases of vodka. No matter how unfair that seems, as Redemption points out, unjust enrichment arises only when "there is no legal contract." *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006) (internal quotation mark omitted). One Vodka does not plausibly contest that the contract is void or unenforceable. Once again, One Vodka must rely on the contract, not equity, to recover the extra money and its leftover cases. The Court must dismiss this equitable claim without prejudice, noting that One Vodka may well determine how to pursue equivalent relief in the context of a breach-of-contract theory.

### IV. One Vodka has not plausibly pled that Redemption defrauded it

Next, One Vodka claims that Redemption fraudulently induced it into forming a contract. According to One Vodka, Redemption represented that "it understood the issue[s] arising with new start-up spirit artisans, including cash flow," and that, despite these inevitable problems, it

6

would work with One Vodka "to get One Vodka's product to a greater market." Am. Compl. ¶ 48. That representation led One Vodka to sign with Redemption.

For fraud in the inducement, One Vodka must plausibly plead that Redemption made a specific misrepresentation with the intent to mislead One Vodka and that One Vodka justifiably relied on that misrepresentation to its detriment. *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994). It has not done so. To start, One Vodka has not identified who said what, or when. *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004); Fed. R. Civ. P. 9(b). Nor has One Vodka identified any misrepresentation of "material fact." *Gibbs*, 647 A.2d at 889. Redemption's saying it would be flexible with One Vodka is broad and vague puffery to attract clients, not a specific promise never to require a start-up to pay its bills on time. *See KDH Elec. Sys., Inc. v. Curtis Tech. Ltd.*, 826 F. Supp. 2d 782, 802–03 (E.D. Pa. 2011). Nor has One Vodka explained how it detrimentally relied on any promises. *Gibbs*, 647 A.2d at 889. For example, it has not pointed to another distributor that it would have chosen absent Redemption's representations. The Court thus dismisses the fraud-in-the-inducement claim, also without prejudice.

One Vodka also claims that Redemption separately defrauded it by representing that Redemption "would hold off on selling One Vodka's product while it waited for payment" and then immediately turning around and selling the vodka. Am. Compl. ¶ 52. As Redemption notes, this fraud claim is barred by Pennsylvania's gist-of-the-action doctrine.

Litigants cannot hide contract claims in tort clothing. If a claim arises from a defendant's independent duty to do no harm, separate from a contract, it is a tort claim. *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 63 (Pa. 2014). For example, a patient can sue her doctor for negligence for a botched surgery, even if the two signed a contract. But if the claim comes from a defendant's failure to perform a duty created solely by a contract, it is a pure contract claim. *Id.* In other words, the gist-

7

of-the-action doctrine bars all tort claims that rest on the *performance* of the contract, but not those that are "collateral" to the contract. *Id.*

That means that One Vodka could sue for fraud in the inducement, for its complaint is the "fraudulent scheme" that tricked One Vodka into the agreement in the first place and not Redemption's faulty "performance of [its] duties under the agreement." *Mirizio v. Joseph*, 4 A.3d 1073, 1087 (Pa. Super. 2010). In comparison, One Vodka's claim for fraud during the contract "essentially duplicates [its] breach of contract claim." *Reed v. Dupuis*, 920 A.2d 861, 864 (Pa. Super. 2007). Per One Vodka, Redemption breached the contract *and* committed fraud by the exact same conduct: liquidating the vodka despite promising not to. Given that overlap, the fraud claim must bow to the contract claim.[1] The Court dismisses this claim without prejudice.

## V. One Vodka has not stated a claim for conversion

One Vodka also accuses Redemption of converting its vodka by selling the vodka without One Vodka's permission and "without lawful justification." *Stevenson v. Econ. Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964) (internal quotation mark omitted). This too is barred by the gist-of-the-action doctrine. Though One Vodka owned the vodka, the vodka was in Redemption's possession with One Vodka's consent based on their contract. That contract, the parties agree, determines whether Redemption could liquidate the vodka and keep the extra money from the sale. Because "the success of the conversion claim depend[s] entirely on [the parties'] obligations as defined by the contract," this tort claim must also bow to the contract. *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 584 (Pa. Super. Ct. 2003). The Court dismisses this claim without prejudice.

---

[1] Redemption also asserts that these fraud claims are prohibited by the economic-loss doctrine. Yet this doctrine bars only *negligence* plaintiffs from recovering for pure economic loss, absent personal injury or property damage. *Azur v. Chase Bank, USA v. Nat'l Ass'n*, 601 F.3d 212, 222 (3d Cir. 2010). It has no application to economic torts, like fraud or tortious interference with contract, which, by their very nature, remedy economic loss.

8

## VI. One Vodka has not plausibly pled a conspiracy to cheat it

Next, One Vodka accuses Redemption of conspiring with Benchmark (not a party to this suit) to cheat it of the rightful price for its vodka. For a civil conspiracy, One Vodka must plausibly plead not just that these two companies "combined … to do an unlawful act" but that they did so with "malice," or the "intent to injure." *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 211 (Pa. 1979). In other words, the two distributors must have sold the vodka for the sole purpose of harming One Vodka, not to benefit their own "legitimate business interests." *Id.*

One Vodka has offered no facts from which to infer that. Indeed, One Vodka has not even posited why either distributor would want to hurt it, or that Benchmark even knew why Redemption was selling the vodka. At most, One Vodka pleads that Redemption and Benchmark acted at the same time. But "[t]he mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy." *Fife v. Great Atl. & Pac. Tea Co.*, 52 A.2d 24, 39 (Pa. 1947). The Court thus dismisses this claim without prejudice.

## VII. One Vodka has not stated plausible claims for trademark infringement

Finally, One Vodka asserts that Redemption infringed and diluted its trademarks by selling its vodka to Benchmark without permission. Trademark owners have a right to control their marks, to an extent. Trademark owners can strictly control the first sale of their products. But after that, trademark owners cannot stop others from reselling "genuine" products. *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998). Such resale does not "cause confusion … or … deceive" customers, for the customer is getting what he expected, so long as the product is "materially" the same. 15 U.S.C. § 1114(1)(a); 15 U.S.C. § 1125(a)(1); *Iberia Foods*, 150 F.3d at 303.

One Vodka does not disagree that Redemption sold "genuine" vodka. Instead, it claims, Redemption, after importing the vodka from France, made an unauthorized first sale of the vodka to Benchmark. That could be infringement. *Bill Blass, Ltd. v. SAZ Corp.*, 751 F.2d 152, 154–55 (3d Cir. 1984). For the public might be falsely "led to think" that Redemption has permission from One Vodka to sell its product. *McCarthy on Trademarks and Unfair Competition* § 25:31.

In response, Redemption asserts that, at the time of the sale, it was an authorized wholesaler and so had permission to sell the vodka wholesale without infringement. *See id.* at § 25:30. For proof that it is an authorized wholesaler, Redemption attaches an affidavit from Redemption's CEO and a license from One Vodka. Neither are public records, nor are they mentioned in or integral to the complaint. So the Court will not consider them at this stage. *Schmidt*, 770 F.3d at 249.

Even absent a general licensing agreement, Redemption claims, it had the right to sell the product in this instance, for the contract expressly permitted Redemption to liquidate lingering product. If the contract permits it, liquidating inventory does not count as infringement. *McCarthy on Trademarks and Unfair Competition* § 25:31; *Bill Blass*, 751 F.2d at 154–55. Here, the contract provides that Redemption "may act to liquidate said inventory." Doc. No. 25-4, at 57. Plainly read, that permits Redemption to sell the product. Per One Vodka's own allegations, Redemption did just that, immediately selling almost all of the vodka to another wholesaler.

Because One Vodka has not made out a plausible claim for trademark infringement, the Court dismisses these claims without prejudice. One Vodka may replead them if it can come armed with more facts and clearer theories of infringement.

## Conclusion

One Vodka has attempted "to interject [tort] claims ... into an action that is decidedly contractual." *Pittsburgh Constr. Co.*, 834 A.2d at 584. None of those tort claims are plausible and so must be dismissed. The Court thus grants Redemption's motion to dismiss in part. The breach-of-contract claim remains. An appropriate order follows.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE